UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARNELL INGRAM,

        Plaintiff,

  v.                                      Case No. 19-C-74

FOND DU LAC COUNTY DEPARTMENT
OF SOCIAL SERVICES,
KAYLA POWERS,
SUPERVISOR JESSICA,
CATHY RIENHART,
PATRICIA L.,
RICHARD W. GEDEMER, and
SUE SCHWARTZ,

        Defendants.

## SCREENING ORDER

Plaintiff Darnell Ingram, who was confined at Fond du Lac County Jail at the time of filing, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Along with his complaint, Ingram filed a motion for leave to proceed without prepayment of the filing fee and a copy of his prisoner trust account statement. In an order dated January 16, 2019, the court waived the initial partial filing fee and directed Ingram to notify the court within 21 days whether he wished to voluntarily dismiss this action to avoid the possibility of incurring a strike under 28 U.S.C. § 1915(g). On February 6, 2019, Ingram filed a motion for the release of documents related to several state court cases. On February 8, 2019, instead of notifying the court of his intent to dismiss this action, Ingram filed a motion to stay the case pending his receipt of free legal advice.

Ingram's motions for the release of documents and to stay will be denied. Ingram's motion to release documents, to the extent it seeks to obtain discoverable material relevant to this action, will be denied as premature. If Ingram's complaint survives screening, he will be able to use the tools of discovery in the Federal Rules of Civil Procedure to gather facts relating to his claims. Now is not the appropriate time to request documents, as the court has not yet screened the complaint, and in any event, discovery requests are not to be served on the court. *See* Fed. R. Civ. P. 5(d). Regarding his motion to stay, Ingram chose to file this action while he was confined in Fond du Lac County Jail. He could have waited to file his complaint until his release on January 31, 2019, or he could have notified the court of his intent to withdraw this action. Either of these options would have allowed him to obtain legal advice and modify his complaint. Granting an indefinite stay would frustrate the court's obligation to screen his complaint "as soon as practicable after docketing," 28 U.S.C. § 1915A(a), and would only further delay this matter. Moreover, since the case will proceed, Ingram is free to continue to seek assistance of counsel and amend his complaint should counsel advise him to do so in the future. His motion to stay will therefore be denied, and his complaint will be screened.

**MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

Although Ingram is no longer confined, he remains subject to the requirements of the Prison Litigation Reform Act (PLRA) because he was incarcerated at the time he filed his complaint. The PLRA gives courts discretion to allow plaintiffs to proceed with their lawsuits without prepaying the $350 filing fee, as long as they comply with certain requirements. 28 U.S.C. § 1915. One of those requirements is that the plaintiff pay an initial partial filing fee. The court previously waived the initial partial filing fee. ECF No. 7. Ingram's motion to proceed without prepayment of the

filing fee will therefore be granted. Ingram is still required to pay the remainder of the fee over time as he is able.

## SCREENING OF THE COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the factual allegations as true and liberally construes them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Nevertheless, the complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

## ALLEGATIONS OF THE COMPLAINT

Ingram alleges that, on November 13, 2017, he reported his ex-wife, with whom he shares two children, to Fond du Lac County Social Services (FDLCSS) for child neglect. He alleges that

3

intake social worker Cathy Rienhart refused to investigate his complaint because he is African-American and that she made negative comments concerning his mental health. Ingram alleges that, around April 1, 2018, Rienhart received a child neglect report against Ingram's ex-wife filed by his ex-wife's father. Ingram alleges that Rienhart investigated this claim because the complainant, Ingram's ex-father-in-law, is white.

According to Ingram, on April 16, 2018, Rienhart and FDLCSS Director Patricia L. removed all children from his ex-wife's home due to child neglect and placed Ingram's children in foster care. Ingram alleges that he received notice of this removal around May 1, 2018, and that he was not previously informed about his children's living situation or about a hearing. Ingram alleges that, in August and September 2018, he made several complaints about the acts of his children's foster mother to Patricia L., supervisor Jessica, and Kayla Powers, who are all FDLCSS employees. Ingram alleges that his children's foster mother kept his children in unsafe, unhealthy conditions. He alleges that no action was taken in response to his complaints because he is African-American and because the foster parents are white.

Around the same time, about August or September 2018, Ingram alleges that he received from Patricia L. a "falsely documented disposition" depriving him of seeing his children for three weeks. ECF No. 1 at 5. He also alleges that Patricia L. did not provide him service, insulted his mental health, and supported his three-week separation from his children.

Ingram claims that, around October 4, 2018, his probation agent informed him that his children's foster mother made allegations against him, which resulted in him being placed in the Fond du Lac County Jail. Ingram claims that an investigation revealed that the allegations against him were false, which led him to file a civil suit against the foster mother in Fond du Lac County

Circuit Court in December 2018. Ingram believes that FDLCSS and his children's foster mother are not submitting his letters to his children. Ingram alleges that, on January 4, 2019, he received a handwritten statement from agent Sue Schwartz containing "intentional, malicious non-truth," and "creat[ing] a disposition of fabricated, altered and falsified evidence to assure injury and punishment." ECF No. 1-1 at 1. He alleges that, on January 9, 2019, Jessica and Kayla Powers visited him and confirmed that "nothing will change," that his "children will stay with Foster parents," and that FDLCSS will not agree to place his kids with him. ECF No. 1-4.

Ingram alleges that, on January 19, 2019, he received a letter dated January 15, 2019, from Deputy Director Richard W. Gedemer, who works for FDLCSS. According to Ingram, the letter refused "to remedy the wrong of all defendants . . . [and] did not address all concerns, appearing to giving [sic] supplant [sic] answers, dishonesty, manipulation, and even praising the acts of social workers." ECF No. 12 at 1. Ingram alleges that Gedemer supported probation officer Aleesha Gillingham in her fabricated allegations. Ingram further alleges that FDLCSS refuses to give him his children despite his completion of "D.V.," anger management, and mental health counseling, as well as completion of a 90-day residential program. *Id.* at 2.

In his original complaint, Ingram sought relief in the form of an injunction that places his children with family members, that bars further actions concerning his children by the defendants, that closes a Child in Need of Protection and/or Services (CHIPS) case, that enters an order of unsupervised visitation, and that orders joint placement of his children between himself and his ex-wife. He also sought monetary damages. In a later letter sent to the court, Ingram asked the court to accept an additional amendment to the "Relief Wanted" section of his complaint. ECF No. 14. The amendment seeks an order that removes his children from foster care, places his children with

him, and orders that the Oshkosh Department of Social Services oversee his CHIPS case while this action is pending. He also seeks additional monetary damages. ECF No. 12 at 1.

**THE COURT'S ANALYSIS**

As an initial, jurisdictional matter, this case appears to be one where abstention under *Younger v. Harris*, 401 U.S. 37 (1971) may be appropriate. For reasons of comity and federalism, *Younger* and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" *Id.* (quoting *Moore v. Sims*, 442 U.S. 415, 426 (1979)). The *Younger* principle has been extended "to state administrative proceedings in which important state interests are vindicated." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986).

The Supreme Court clarified that *Younger* abstention doctrine applies in only three exceptional circumstances: (1) ongoing state criminal proceedings; (2) certain civil enforcement proceedings that are "akin to a criminal prosecution"; and (3) pending civil proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). "[T]he critical consideration in evaluating a state civil proceeding is how closely it resembles a criminal prosecution." *Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811, 816 (7th Cir. 2014). If a court determines that a case falls into one of these categories, it must consider whether the proceedings are ongoing, implicate

important state interests, and give the plaintiff an opportunity to raise his constitutional challenges. *See Loertscher v. Schimel*, No. 14-cv-870-jdp, 2015 WL 5749827, at *5 (W.D. Wis. Sept. 30, 2015) (citing *Middlesex*, 457 U.S. at 432). The Supreme Court has clarified that the *Middlesex* factors are "not dispositive," but are, instead, "*additional* factors appropriately considered by the federal court before invoking *Younger*." *Sprint*, 571 U.S. at 81.

The present state of the record, which consists only of Ingram's various filings, is unclear as to whether *Younger* abstention should apply. Although Ingram alleges that he faces an ongoing CHIPS case, and CHIPS cases have been held to constitute state civil enforcement proceedings that are "akin to criminal prosecution" for *Younger* purposes, *see Loertscher*, 2015 WL 5749827, at *5, the status and details of Ingram's CHIPS case, as well as the status and details of any other ongoing state proceeding that involves Ingram and may require abstention, are unclear. Absent a more developed record, the court cannot determine whether the civil enforcement proceedings involving Ingram have any of the "defining characteristics" of proceedings "akin to criminal prosecution" set forth in *Sprint*. *See id.*; *Sprint*, 571 U.S. at 592. While this case appears to be one that could require abstention under *Younger*, absent a more developed record, the court cannot conclude at this stage whether abstention is appropriate.

Ingram will be allowed to proceed on a Fourteenth Amendment equal protection claim against Cathy Rienhart, Patricia L., Jessica, and Kayla Powers in their individual capacities. To state a § 1983 equal protection claim, a plaintiff must allege that (1) he is a member of a protected class, (2) he is similarly situated to others not part of the protected class, (3) he was treated differently than those similarly situated individuals, and (4) those treating him differently did so with discriminatory intent. *See Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005); *Chavez v. Ill.*

7

*State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). Ingram alleges that Rienhart, Patricia L., Jessica, and Powers failed to investigate and respond to his complaints because he is African-American. In contrast, Ingram alleges that the complaints filed by his ex-father-in-law and by his children's foster mother, both of whom are white, were properly addressed. Construed liberally in Ingram's favor, these allegations are sufficient to state an equal protection claim based on racial discrimination. *See Bennett v. Schmidt*, 153 F.3d 516, 518–19 (7th Cir. 1998); *see also DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 n.3 (1989).

Ingram will also be able to proceed on a Fourteenth Amendment due process claim against FDLCSS, or more precisely, Fond du Lac County, through FDLCSS' director, Patricia L.. Substantive due process under the Fourteenth Amendment "encompasses 'the right of a man and woman to marry, and to bear and to raise their children,' as well as 'the right of a child to be raised and nurtured by his parents.'" *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 928 (7th Cir. 2011) (quoting *Doe v. Heck*, 327 F.3d 492, 517–18 (7th Cir. 2003)). "The constitutional right to family integrity is not absolute; rather, it must be balanced against the state's interest in protecting children from abuse." *Id.* (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1019 (7th Cir. 2000)). In this circuit, courts "require that caseworkers have 'evidence to support a reasonable suspicion of past or imminent abuse' before they may take a child into protective custody." *Id.* (quoting *Terry v. Richardson*, 346 F.3d 781, 787 (7th Cir. 2003)). Ingram alleges that FDLCSS deprived him of seeing his children for three weeks and that they placed his children in foster care based on falsified evidence. These allegations are sufficient to state a due process claim, at least at this initial screening stage of the proceedings.

Ingram fails to state a claim against Sue Schwartz and Richard Gedemer. Ingram alleges that Schwartz gave him a letter that contained various falsehoods and that Gedemer wrote him a letter failing to address all his concerns and supporting the work of social workers. Aside from being vague, these allegations fail to specify what Schwartz and Gedemer personally did to violate his constitutional rights. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("'Individual liability under § 1983,' however, 'requires personal involvement in the alleged constitutional deprivation'" (quoting *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010)). Mere disagreement with the content of correspondence, without alleging how that correspondence resulted in a constitutional deprivation, is insufficient to state a claim. Ingram has therefore failed to state a claim against Schwartz and Gedemer.

In sum, Ingram may proceed on his Fourteenth Amendment claims against FDLCSS, Cathy Rienhart, Patricia L., Jessica, and Kayla Powers. He may not proceed on any other claims. Defendants Sue Schwartz and Richard Gedemer are terminated.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for the release of documents (ECF No. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to stay (ECF No. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is referred to Magistrate Judge Nancy Joseph for all pretrial proceedings in accordance with 28 U.S.C. § 636(b)(1). The magistrate judge will decide all non-dispositive motions (i.e., motions to compel, motions to recruit counsel, and motions to amend pleadings). A party may serve and file objections to an order deciding a non-dispositive

issue within 14 days of being served with a copy. This court will consider any timely objection and modify or set aside any part of the order that is clearly erroneous or is contrary to law. *See* Fed. R. Civ. P. 72(a). The magistrate judge will also issue a report and recommendation concerning any motion for injunctive relief or dispositive motions that are filed (i.e., motions to dismiss and motions for summary judgment). Either party may object to the magistrate judge's report and recommendation within 14 days of being served with a copy. This court will conduct a de novo review of any part of the magistrate judge's recommendation that has been properly objected to and will either accept, reject, or return the matter to the magistrate judge with instructions. *See* Fed. R. Civ. P. 72(b). The case will return to this court for trial, if necessary.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon the defendants pursuant to Federal Rule of Civil Procedure 4. The plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2)–(3). Although Congress requires the court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service.

**IT IS FURTHER ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that copies of the complaint and this order be sent to the Fond du Lac County Corporation Counsel.

**IT IS FURTHER ORDERED** that the plaintiff shall pay the $350.00 balance of the filing fee, over time, as he is able. The plaintiff may forward payments to the Clerk of Court. The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that the plaintiff shall submit all correspondence and legal material to:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide a correct address could result in dismissal of the case for failure to prosecute.

Dated at Green Bay, Wisconsin this  15th  day of February, 2019.

> s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Court